HUFSCHMIDT *et al. v.* GROSS *et al., Appellants.*

Division One, December 12, 1892.

1. **Homestead:** DWELLING-HOUSE: REVISED STATUTES, 1879, SEC. 2689. Section 2689, Revised Statutes, 1879, relating to homesteads is simply one of exemption as to the dwelling-house and appurtenances therein named, and such exemption ceases when the property loses its character as a dwelling-house.

2. ――――: ESTATE OF WIDOW AND MINOR CHILDREN: REVISED STATUTES, 1879, SEC. 2693. Under section 2693, Revised Statutes, 1879, however, on the death of the husband, the wife takes a life-estate in the homestead property, and the minor children an estate therein during their minority, and the continuation of such estates is not dependent on continued residence on the property.

3. ———: ———: ABANDONMENT. The widow of the homestead owner does not abandon her life-estate by a subsequent marriage, and by the removal of her permanent residence to that of her husband in another county. *(Kaes v. Gross, 92 Mo. 647, overruled.)*

4. ———: ———: ———. Nor are the rights of the minor children in such homestead affected by the marriage of their mother and her removal to the residence of her husband.

5. ———: ———. A homestead owner of property valued at $4,500 having died, and his widow having afterwards married and removed with her minor children from the property, the administrator of the deceased sold it, under an order of the probate court, for the payment of debts. A school debt secured by a mortgage executed by the deceased and his wife in his lifetime was probated against the estate which the administrator paid off out of the purchase money received at the sale. The wife and minor children subsequently brought suit to assert their homestead rights. *Held,* that they were entitled to recover, and that the property being of greater value than the homestead interests and mortgage debt combined, the widow and children are entitled to the full value of their homestead interests, free from any deduction in favor of the purchaser at the administrator's sale because of the antecedent school mortgage.

6. ———: ———: ———. The widow did not abandon her homestead right by buying other real property with the proceeds of insurance policies which she took by virtue of the provisions of the policies, and which proceeds, therefore, did not belong to her deceased husband's estate.

7. ———: ———: ———. The minor children were entitled to enforce their rights in the homestead independently of the widow.

8. ———: ———: ———. A homestead estate vested in a widow and minor children is not subject to partition.

9. ———: ———: ———. The children in this case did not bring any action to enforce their homestead rights until about ten years subsequent to the death of their father and several years after some of them had attained their majorities. *Held,* that it was proper for the decree to divide the rents and profits of the homestead estate, and to designate the sum due each plaintiff, since those who had attained their majority when the decree was entered had the right to receive what they had been deprived of.

*Appeal from Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*T. A. Lowe* for appellants.

(1) The decree cannot be sustained; the accounting of the referee was on a wrong principle. Thompson on Homesteads, sec. 725; *Mix v. King*, 66 Ill. 145; Revised Statutes, 1889, sec. 5444; *Keyes v. Hill*, 30 Vt. 579; *Kaes v. Gross*, 92 Mo. 647; *Finney v. Prindeville,* 86 Mo. 521; Thompson on Homesteads, secs. 241, 244, 246, 570. (2) If the parties are ito be regarded as *quasi* cotenants, then the right of one or several cotenants to collect rents from the cotenant in possession can be derived only from the fact that such cotenant in possession has by his acts placed himself in a position where he would be chargeable with rents. *Long v. McDow*, 87 Mo. 197; *Reagan v. McCoy*, 29 Mo. 356; *Dodd v. Barry*, 15 Mo. App. 595. (3) There was no demand for homestead nor for rents and profits prior to the institution of this suit eight years after the right accrued. Such laches are inexcusable. *Evans v. Snyder*, 64 Mo. 516. (4) The purchase of the Phelps county farm constituted an acquisition of a new homestead. (5) The marriage of the widow and her removal with her minor children to the home of her new spouse constituted an abandonment of the homestead. *Kaes v. Gross*, 92 Mo. 647. (6) While the parents, or either of them, live and remain *sui juris*, the minor children have no substantive right in the homestead which they can assert independently of such parents, or against them; in other words, in this case, the abandonment by the parents was the abandonment by the minor children, so long as they remained with and under the control of the parent, whether natural or *in loco parentis*. Thompson on Homesteads, secs. 43, 570; *Nevins' Appeal*, 47 Pa. St. 230; *Shepard v. Brewer*, 65 Ill. 383; *Howze v. Howze*, 2 S. C. 232; *Clubb v. Wise*, 64 Ill. 157; *Brown v. Coon*, 36 Ill. 243;

*Wright v. Dinning*, 46 Ill. 271; *Buck v. Conlogue*, 49 Ill. 391; *Morrill v. Hopkins*, 36 Tex. 686; *Dawson v. Holt*, 44 Tex. 174. (7) This being the law, there was no legal impediment to the administrator's sale in March, 1882, and the purchaser, Gross, took the estate discharged of the homestead. And although the rule apparently to the contrary, contended for by the respondents, to the effect that the surviving parent cannot alienate or abandon the homestead so as to bar the rights of the minor children, as announced by the appellate courts of this state in *Rohrer v. Brockhage*, 13 Mo. App. 397, affirmed in *Rohrer v. Brockhage*, 86 Mo. 544; *Rohrer v. Brockhage*, 15 Mo. App. 16; *Kochling v. Daniel*, 82 Mo. 54; *Carroll v. Hurt*, 78 Mo. 649,—the purchaser, Gross, is entitled in equity to be reimbursed to the amount of the school mortgage. *Valle's Heirs v. Fleming's Heirs*, 29 Mo. 152; *Jones v. Manly*, 58 Mo. 559; *Woerther v. Miller*, 13 Mo. App. 567; *Evans v. Snyder*, 64 Mo. 516.

*L. F. Parker* for respondents.

(1) The policies of insurance collected by the widow of Hufschmidt were payable to her, never became the property of his estate, and did not pass to her under the will. (2) The claim that the amount of plaintiffs' recovery should be reduced by the proportion to which the widow would have been entitled is opposed to the decisions of this court. *Rohrer v. Brockhage*, 13 Mo. App. 397; s. c., 86 Mo. 544; *Kochling v. Daniel*, 82 Mo. 54; *Canole v. Hurt*, 78 Mo. 649; *Rogers v. Mayer*, 84 Mo. 520. (3) *First.* In this state, at the death of the head of a family, having a right of homestead, the interest acquired by the widow and minor children is an estate for life in the widow, and in the children during their minority, and this estate

vests on the death of the husband and father, and is not lost by abandonment; and, *second*, even though a widow may abandon such homestead, the taking of the minor children with her will not operate as an abandonment by them. The case of *Kaes v. Gross*, 92 Mo. 647, is erroneous in principle, and should be overruled. An examination of the statutes of the different states, on this subject, and the construction each has received will show that there is no "general doctrine" on this subject, and that each state stands on its own statute even as the proverbial tub "stood on its own bottom."

BLACK, J.—This is a suit to establish a homestead right in favor of the plaintiffs in the property described in the petition, and for an accounting of the rents and profits of such homestead interest.

The material agreed facts are these: Gustavus Hufschmidt died on the twenty-sixth of September, 1879, leaving a widow and a number of children by his then and by a former wife. Two of the children by the former wife, namely, George and Alice, and one by the second wife, named Lulu, were minors. At the time of his death and prior thereto, he owned a lot in the town of Pacific, in Franklin county, on which there was a brick building, the upper story of which was used by him as his residence, and the lower story was used for business purposes. In August, 1880, his widow married Phillip Kaes. Immediately after her marriage to Kaes, she left the property before mentioned, taking with her Alice and Lulu, and thereafter resided with her second husband at his home in St. Louis county. The administrator of the Hufschmidt estate sold the property to pay debts of the deceased, to the defendant, George Gross; and made to him a deed, dated the tenth of March, 1882, at which date

Gross took and has ever since held exclusive possession of the property so purchased.

The three children, George, Alice and Lulu, the plaintiffs in this case, were still minors at the date of the administrator's deed. George reached the age of majority on the tenth of November, 1885, and Alice on the tenth of April, 1889, and Lulu will attain that age the tenth of January, 1897. This suit was commenced against Gross in March, 1889. Kaes and wife were made defendants, but they filed no answer. On the twenty-first of January, 1890, the court made an interlocutory decree declaring the plaintiffs entitled to a homestead in the premises; that they had been deforced therefrom by the defendant Gross since tenth of March, 1882; that the property did not exceed in quantity, but did in value, the homestead interest, and that the homestead could not be severed. The court at the same time directed a reference for the purpose of taking an account of the rents and profits.

It was agreed before the referee that the property was of the value of $4,500, and it may be stated here that the homestead exemption in towns like Pacific cannot exceed $1,500 in value. The referee ascertained the gross rental value of the property, and from that deducted the taxes, repairs and necessary improvements. He fixed the net rental value from the tenth of March, 1882, to the date at which George became of age at $2,781, and from that time until Alice became of age at $2,657, and from that date to the date of the interlocutory decree at $532, and from thence on until the other plaintiffs would become of age at $490 per annum. He charged defendant with one-third of the above amounts, that is to say, in the proportion of $1,500, the value of the homestead, to $4,500, the value of the entire property, all of which the court approved, and gave judgment accordingly.

1. The first, and by far the most important, question in this case is whether the plaintiffs have a homestead in the premises in question. The contention of the defendant Gross is twofold. He insists, *first*, that the widow abandoned her homestead in this property when she married Kaes, and took up a permanent residence with him in another county; *second*, that the abandonment of the homestead by her was an abandonment of it by the minor children. The first of these propositions was affirmed in *Kaes v. Gross*, 92 Mo. 647, on the same facts now before us; and both propositions are clearly asserted in several cases decided by the supreme court of Illinois. *Buck v. Conlogue*, 49 Ill. 391; *Shepard v. Brewer*, 65 Ill. 383. See also *Wright v. Dunning*, 46 Ill. 271, and *Clubb v. Wise*, 64 Ill. 157. The statute of that state, however, provides: "Such exemption shall continue after the death of such householder, for the benefit of the widow and family, some or one of them continuing to occupy such homestead, until the youngest child shall become twenty-one years of age, and until the death of such widow." 1 Statutes of Illinois, [D. B. Cook & Co.'s Ed. of 1858]. The statute of that state, it will be seen, simply continues the exemption, and that, too, on the condition of a continued occupancy of the property. It is so unlike the statute of this state that the adjudications there can be of no authority here on the question now in hand. This will be clear when we come to examine the statute of this state.

The first section of the homestead law, being section 2689, of the Revised Statutes, 1879, exempts the "dwelling-house," and appurtenances not exceeding the specified amount and value, which is "used by such housekeeper or head of a family as such homestead," from attachment and execution. Thus far the statute is simply one of exemption, and the exemption extends

only to the dwelling-house and appurtenances. When the property ceases to be the dwelling-house, it ceases to be exempt from attachment and sale under execution under this section. But section 2693 provides: "If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or, if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased * * * until the youngest child shall attain its legal majority, and until the death of such widow, and such homestead shall, upon the death of such housekeeper or head of a family, be limited to that period. But all the right, title and interest of the deceased housekeeper or head of a family in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased."

This section makes the *homestead*, not merely a right of exemption, pass to and vest in the widow and minor children, without being subject to the payment of the debts of the deceased. The same section speaks of this interest which is to pass to the widow and minor children as an *estate*. This estate which passes to them is not conditional, that is to say, it is not made to depend upon occupancy by her or the children, as in the case of the homestead exemption under the first section. Again section 2694 provides that, on setting out homestead and dower to the widow, the homestead must be first set out, and dower in the residue of the lands of the deceased is diminished by the amount of the interest of the widow in such homestead so set out to her. See also *Bryan v. Rhoades*, 96 Mo. 486. It

was not the intention of the legislature to substitute a mere exemption right for the dower estate or any part thereof.

Under the fifth section of the homestead law as enacted in 1865, it was held that, where the husband died seized of a fee in the homestead property, the wife took a fee simple absolute, subject to the rights of the minor children, and on her death the estate would go to her heirs to the exclusion of his heirs.  *Skouten v. Wood*, 57 Mo. 380.  The court then followed the interpretation given to the statute by the supreme court of Vermont, from which state the statute was taken. That ruling has been followed in all subsequent cases where the husband died after that act took effect and before the amendment of 1875.  Section 5 of the act of 1865, as amended in 1875, is now section 2693 of the Revised Statutes, 1879, as before set out.  The amendment limited the homestead estate vested in the wife to a life-estate, and made the remaining estate subject to the laws of the devise, descent, etc.; but in other respects the statute remains the same as before, and with these qualifications should receive the same construction.

The homestead which passes to and vests in the widow and children is not subject to the payment of the debts of the deceased husband; but the interest which she takes at the death of her husband is more than a mere exemption.  She takes a life-estate in the homestead property, and the minor children have an estate therein during the period of their minority. The continuation of this estate in the widow and minor children does not depend upon a continued residence in the property.  The statute attaches no such condition. It was held in the recent case of *West v. McMullen, ante*, p. 405, by division 2 of this court, disapproving

what was said on this question, in *Kaes v. Gross*, 92 Mo. 647, that the widow did not forfeit her homestead by a second marriage and removal to the home of her second husband, and we approve that ruling for the reasons just stated.

It follows from what has been said that the widow of Hufschmidt did not abandon her homestead life-estate by her second marriage, and by taking up a permanent residence with her second husband at his home in another county. Nor are the rights of the minor children, given them by the homestead law, prejudiced or lost by such marriage and removal of the mother of one of them, the stepmother of the others.

2. It appears from the agreed facts upon which the trial court entered the interlocutory decree that Hufschmidt and his first wife executed a school mortgage in 1874 to Franklin county to secure $1,009.72. This debt was proved up against the Hufschmidt estate, and at the date of the sale of the property to Gross amounted to the sum of $1,500.75. Gross paid for the property the sum of $3,700, and the administrator paid off the mortgage out of the purchase money so paid by Gross. On these facts it is urged that Gross is equitably entitled to have refunded to him the amount of the mortgage debt so paid.

As the administrator paid off the mortgage, Gross acquired the property free from that lien, and subject only to the homestead estate of the widow and children. As the property was of a greater value than the homestead and mortgaged debt combined, the widow and children are entitled to their homestead of $1,500 in value, free from any deduction because of the mortgage. The defendant has no right, legal or equitable, to be repaid the amount of the mortgage debt.

3. It appears the widow Hufschmidt collected on three policies of life insurance the aggregate sum of $4,022; she collected rents from the property in question to the amount of $565, and received household goods to the value of $385.20. With this money she purchased a farm in Phelps county, and received the deed in her own name. Hufschmidt left a will by which he gave to his wife the proceeds arising from these life policies. These facts, it is insisted, amount to the acquisition of a new homestead, and the abandonment of the old.

In the first place she took the proceeds arising from the policies of insurance by virtue of the agreements expressed in them, and not by virtue of the will. The money invested by her in the Phelps county land belonged to her, and not to her deceased husband's estate; so that the facts just stated, though found in the record, have nothing whatever to do with this controversy. As she did not abandon her homestead estate by her second marriage and removal to another county, she did not abandon it by the purchase of other property with means which belonged to her.

4. It is next insisted that these minors have no rights in or to the homestead which they can enforce independently of the widow, the mother of one and stepmother of the others.

The statute vests the homestead estate in the widow and minor children and provides that it shall "continue for their benefit." The purpose of the law was to furnish a common home and common support for the widow and children, and neither has the right to the enjoyment of the same to the exclusion of the others. Hence, it has been held that the right of the minor children to hold and enjoy the estate vested in

them and their mother upon the death of the father is not effected by the death of the mother. *Canole v. Hurt*, 78 Mo. 649. The widow cannot hold to the exclusion of the minor children, and they may recover possession against her vendee. *Roberts v. Ware*, 80 Mo. 363; *Kochling v. Daniel*, 82 Mo. 54. This estate vested in the widow and children is not subject to partition. *Rhorer v. Brockhage*, 86 Mo. 545, affirming *Rhorer v. Brockhage*, 13 Mo. App. 397. Under these decisions the minor children would have the right to recover in ejectment, had the homestead been set off, and in such a suit they could recover rents and profits by way of damages. Here the widow is made a defendant, and she does not complain of the decree, and is bound thereby, and the defendant is not required to pay any more than he should pay, and he has no just ground of complaint.

5. It is true the decree divides the rents and profits and specifies the amount to be paid to each plaintiff; but it is to be remembered that two of the plaintiffs had reached the age of majority when the decree was rendered. They had a right to receive that of which they had been deprived, and there was no error in thus specifying the amount to be paid to each.

6. The further claim on the part of the defendant Gross is that, as the property was worth more than $1,500, the plaintiffs should have rents and profits only in the proportion that $1,500 bears to the whole value, that is to say, to $4,500. This is the rule which the court and referee adopted, so there is no point in the objection.

But it is said the court should have ordered the homestead transferred to defendant Gross, on the payment of the value thereof by him; or that Gross, at the option of the plaintiffs, should transfer his interest to them on the payment of the value of such interest;

or the court should have ordered a sale of the premises and then apportioned the proceeds. The court was not, in our opinion, restricted to these methods; for section 2698 contains this further provision: "And such court may make all such orders in the premises as shall be equitable or needful." Besides this no such objection as that now urged was made in the trial court.

7. We may add that the evidence taken by the referee is not preserved by this record, and, hence, his findings of the facts are not open to review here. Indeed, no objection is made to them. The decree directs the payment of $163.67 to Lulu on the twenty-first of January, 1891, and on that day in each succeeding year to a specified date, namely, tenth of January, 1897, the time at which she will attain the age of majority.

It is admitted by the plaintiff that the decree is erroneous in this, that it should provide that these payments cease upon her death, should she die before the tenth of January, 1897. The decree will be modified to the extent just stated, but in all other respects the judgment is affirmed. Defendant Gross will pay the costs of this appeal. All concur.